UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

KAREN BARZMAN, PH.D.,

                           Plaintiff,                     Dkt. No. 3:22-CV-0367 (TJM/ML)


      -against-


STATE UNIVERSITY OF NEW YORK,
DONALD NEIMAN, CELIA KLIN, ANDREW
BAKER, and NANCY UM,

                         Defendants.
------------------------------------------------------------------X


## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS


**GISKAN SOLOTAROFF & ANDERSON LLP**
90 Broad Street, 2nd Fl.
New York, New York 10004
(646) 964-9640
Jason L. Solotaroff
Amy E. Robinson
*Attorneys for Plaintiff*

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES……………………………………………………………………iii

I. PRELIMINARY STATEMENT......................................................................................1

II. STATEMENT OF FACTS...........................................................................................1

    A.  Dr. Barzman's Background…………………………….......................................1

    B.  Dr. Barzman's Relationship with John Tagg………………….......................2

    C.  Binghamton Administrators Were Made Aware of Barzman's Complaints.....................5

    D.  The Workplace Abuse Continues After Barzman's Complaints........................7

    E.  Dr. Barzman's Constructive Discharge and Damages.........................................8

III. ARGUMENT…………………………………………………………………….....9

    A.   Standard of Review on Rule 12(b)(6) Motion to Dismiss………........................9

    B. Title IX Authorizes Claims for Employment Discrimination……………….....................9

    C. Plaintiff's Claims Are Timely........................................................................11

    D. Plaintiff Has Stated a Claim Under Title IX………………………................13

    E.  The Individual Defendants Are Not Sued Under Title IX ................................15

    F.  Plaintiff's NYSHRL Claims Should Proceed................................................. 16

CONCLUSION.......................................................................................................17

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 1955, 167 L. Ed. 2d 929 (2007) ................................................................................. 9

*Car-Freshner Corp. v. Sun Cedar, Inc.*,
  2016 U.S. Dist. LEXIS 90669, (N.D.N.Y. July 13, 2016) .......................................................... 9

*Carnegie Mellon Univ. v. Cohill*,
  484 U.S. (1988) ............................................................................................................................16

*Cavalier v. Catholic Univ. of America*,
  F. Supp. 3d 9 (D.D.C. 2018) .................................................................................................... 12

*Davis v. Monroe County Bd. of Educ.*,
  526 U.S. 119 S. Ct. 1661, 143 L. Ed. 2d 839 (1999) ......................................................... 13,14

*Doe v. Brown Univ.*,
  327 F. Supp. 3d 397, (D.R.I. 2018) ............................................................................................ 12

*Doe v. Syracuse Univ.*,
  2022 U.S. Dist. LEXIS 47053, (N.D.N.Y. Mar. 16, 2022) .................................................. 13,14

*Fitzgerald v. Henderson*,
  251 F.3d 345 (2d Cir. 2001) ...................................................................................................... 12

*Gant v. Wallingford Bd. of Educ.*,
  195 F.3d (2d Cir. 1999) (quoting *Davis*, 526 U.S. at 648) ...................................................... 14

*Gebser v. Lago Vista Indep. Sch. Dist.*,
  524 U.S. 1989, 141 L. Ed. 2d 277 (1998) ................................................................................. 14

*Holmes v. Grubman*,
  568 F.3d 329, (2d Cir. 2009) ....................................................................................................... 9

*North Haven Board of Educ. v. Bell*,
  U.S. 512 (1982) ......................................................................................................................... 10

*O'Connor v. City of Newark*,
  440 F.3d 125 (3d Cir. 2005) ...................................................................................................... 12

*Papelino v. Albany Coll. of Pharmacy of Union Univ.*,
  633 F.3d (2d Cir. 2011) .............................................................................................................. 14

*Poulsen v. City of N. Tonawanda*,
   811 F. Supp. (W.D.N.Y. 1993) ........................................................................ 15

*Roskin-Frazee v. Columbia Univ.*,
   17-CIV-2032-GBD, 2018 U.S. Dist. LEM 28937, (S.D.N.Y. Feb. 21, 2018) ........................ 14

*Ross-Caleb v. City of Rochester*,
   512 F. (2d Cir. 2013)........................................................................................ 16

*Tubbs v. Stony Brook Univ.*,
   343 F. Supp. 3d (S.D.N.Y. 2018)........................................................................ 14

*Vengalattore v. Cornell Univ.*,
   2020 U.S. Dist. LEXIS 76929, (N.D.N.Y.) ........................................................... 10

*Vengalattore v. Cornell Univ.*,
   36 F.4th 2022 U.S. App. LEXIS 15174 (2d Cir. 2022) ....................................... 9,10

*Wise v. N.Y. City Police Dep't*,
   928 F. Supp. (S.D.N.Y. 1996).......................................................................... 15

*Wurtzburger v. Koret*,
   2018 U.S. Dist. LEXIS 80925, 2018 WL 2209507, (S.D.N.Y. May 14, 2018) ...................... 16

## Rules

Rule 12(b)(6)............................................................................................................ 9
Title IX of the Civil Rights Act of 1964 ...................................................................... 9

## Statutes

526 U.S. at 648........................................................................................................ 14
U.S.C. § 1681 .......................................................................................................... 13

Plaintiff Karen Barzman, Ph.D., respectfully submits this memorandum of law in opposition to the motion to dismiss submitted by Defendants the State University of New York ("SUNY"), Donald Neiman, Celia Klin, Andrew Baker, and Nancy Um.

## I.    PRELIMINARY STATEMENT

Dr. Barzman brought this action to remedy a long and severe pattern of harassment by Defendants SUNY and administrators at SUNY-Binghamton. Dr. Barzman was abused by a departmental colleague with whom she had to maintain a direct relationship both during and after she ended their personal, domestic relationship. In recent years, she repeatedly went to the individual defendants for help only to be rebuffed each time. Defendants' refusal to assist Dr. Barzman by, among other things, refusing to transfer her to another department, eventually forced Dr. Barzman to sign a "retirement agreement" and resulted in filing of this action.

Defendants have now made a cursory, half-hearted, motion to dismiss for failure to state a claim. They somehow contend that there is no claim for employment discrimination under Title IX even though the Second Circuit conclusively held to the contrary weeks before the filing of motion. Defendants' other arguments either mischaracterize Dr. Barzman's claims or similarly misstate the law. Defendants' motion should be summarily denied.

## II.    STATEMENT OF FACTS

The following facts, which are assumed to be true on a motion to dismiss, are taken from the Complaint.

### A.    Dr. Barzman's Background

Plaintiff Karen Barzman, Ph.D., is a professor of Art History at SUNY's Harpur College at Binghamton University. Compl. ¶ 1. Binghamton University is a SUNY institution that receives federal financial assistance.  Compl. ¶¶ 7, 48. Dr. Barzman received an undergraduate degree from

New York University in Fine Arts and Classical Civilization, and a master's degree from Bryn

Mawr College, and a Ph.D. from the Johns Hopkins University, both in the History of Art. Compl.

¶ 17.  Her specialty is Italian Renaissance and Baroque. Compl. ¶ 18.  Dr. Barzman joined the

faculty of the Harpur College Art History Department in 1999 and was awarded full professor

status in 2017. Compl. ¶¶ 18, 19.

###### B.    Dr. Barzman's Relationship with John Tagg

Dr. Barzman was involved in a domestic relationship with John Tagg from September

1996 until May 2005. Compl. ¶ 20. Tagg is currently Distinguished Professor in Binghamton's

Art History Department. *Id.* During their tumultuous relationship, Tagg was physically violent

and emotionally abusive to Dr. Barzman. Compl. ¶ 21. Tagg's acts of abuse included forcefully

shoving and shaking Dr. Barzman, yelling at her, berating and body shaming her, throwing

objects at her, and compelling her to her knees to perform menial and degrading tasks. *Id*. Dr.

Barzman did not report the abuse to the police because she was terrified of Tagg. *Id*.

In 1999, Tagg, who was already a full professor and chair of the Art History Department

at Binghamton, arranged for Dr. Barzman to be hired at Binghamton.  Compl. ¶ 22. Dr. Barzman

had been teaching at Cornell University at the time. *Id*.

Once Dr. Barzman joined the faculty of Tagg's department, he began abusing her at work

as well, treating her in a demeaning and patronizing manner at faculty meetings and encouraging

other faculty members to treat her in the same way. Compl. ¶ 23.

After Dr. Barzman ended the abusive relationship with Tagg in 2005, he became

increasingly menacing in the workplace. *Id*. Tagg's Art History Department allies, in junior

positions and obligated to him as chair, began treating Dr. Barzman differently and worse than

other faculty members. *Id*. The difference of treatment included Dr. Barzman being ignored,

criticized, or ridiculed at department events, from faculty meetings to social occasions. Compl. ¶ 24. The Complaint details many specific examples of this disparate treatment, including but not limited to:

- <u>Dr. Barzman's Exclusion from Professional Training</u>:  In January 2019, Defendant Nancy Um, who was then Chair of the Art History Department and is now Associate Dean of Harpur College, announced that she would be conducting Binghamton's first "Digital Humanities Research Institute," which offered intensive training for faculty members in this new area of scholarship. Compl. ¶ 28. Um had been among the Art History faculty who had been most hostile and abusive toward her, with a documented history of excluding Dr. Barzman from doctoral committees. *Id.* Dr. Barzman expressed her high level of interest in and qualifications for the program to Um both informally and in a formal application.  Compl. ¶ 29.  Even though Dr. Barzman's candidacy for the program was stronger than other applicants both in terms of her qualifications and the program's relevance to her research, on March 22, 2019, Um rejected Dr. Barzman's application and Dr. Barzman was prevented from participating in the program. *Id.* Um continued to exclude Dr. Barzman from "digital humanities" training programs on campus, which were publicized by word of mouth among Um's campus cohort. *Id.*

- <u>Colleagues Refuse to Communicate with Dr. Barzman</u>: Tagg and his allies cut off communication with Dr. Barzman regarding departmental matters and refused to share important information regarding classroom teaching and instruction. Compl. ¶ 30. From January 2019 to July of 2020, Dr. Barzman was away from Binghamton on sabbatical and on a fellowship. *Id.* While she was on her fellowship, the COVID-19

pandemic began and Binghamton faculty began teaching remotely. *Id.* While still on
her fellowship, Dr. Barzman, who had no experience teaching online, began
contacting the other members of the department for assistance in getting up to speed
with online instruction, anticipating her return to teaching in August 2020. Compl. ¶
31. No one ever responded to Dr. Barzman's requests for help or advice; she was
completely iced out. *Id.* It was unprecedented in Dr. Barzman's 22-plus years at
Binghamton for an Art History faculty member's listserv queries to be ignored. *Id.*
Even when Dr. Barzman requested that the Art History chair at the time, Pamela
Smart, place an item on a faculty meeting agenda for sharing tips on on-line teaching,
Smart refused. Compl. ¶ 32. In Dr. Barzman's experience, this was also
unprecedented. *Id.*

- <u>Dr. Barzman is Given Disadvantageous Teaching Assignments</u>: Dr. Barzman was
assigned unfavorable teaching time slots, including as recently as the Fall of 2021,
which impeded her ability to build her enrollments, foster a cohort of students to
follow her from semester to semester, and built relationships that could lead to
supervision for honors, MA, and Ph.D. theses – all benchmarks that bring recognition
to faculty in the form of merit raises and monetary teaching awards. Compl. ¶¶ 34-35.
Dr. Barzman had been assigned disadvantageous time slots more than any other
faculty in the Art History Department, including junior faculty. Compl. ¶ 35. When
Dr. Barzman most recently protested, Pamela Smart agreed to change the schedule
but did not do so. *Id.*

- <u>Dr. Barzman is Prevented from Contributing to Department Personnel Committees</u>:
As a senior member of the Art History Department, it was Dr. Barzman's privilege as

well as her right and responsibility to sit on tenure and personnel committees and take

her turn as committee chair. Compl. ¶ 36. But Tagg and his department allies

consistently excluded Dr. Barzman from playing any leadership role and belittled,

marginalized, or completely rejected her committee contributions. *Id.* This

professional marginalization on department personnel committees was often

accompanied by menacing aggression on the part of Tagg, to which other department

members turned a blind eye. Compl. ¶ 37.

**C.     Binghamton Administrators Were Made Aware of Barzman's Complaints**

The Complaint alleges that Dr. Barzman made numerous and sustained efforts over a

course of many years to inform Binghamton administrators about Tagg's menacing behavior

toward her.

For example, in January 2014, after Tagg intimidated Dr. Barzman while she was

performing an assignment for one of the Art History Department's committees, Dr. Barzman

sent the following email:

> I have been directed to your offices to **continue my efforts to receive protection in the workplace from intimidation, harassment, and efforts at either silencing or coercion on the part of a colleague [Tagg]**, from whom I suffered verbal, emotional and physical abuse in a nine-year domestic relationship. (…) Over the course of the 14-some years I've been working at Binghamton University, this colleague has been either chair or Director of Graduate Studies in my department (…). **Even when he has not been in a supervisory relationship with me, he has continued to act aggressively, to denigrate and humiliate me publicly, and to consistently silence me in terms of my professional voice in the department**. I have attempted to bring my concerns to previous [administrators] (…) The problems are now quite acute. (…) I am afraid to go to department meetings and I am literally ill with anxiety about confrontations in the workplace (…).

Compl. ¶ 38 (emphasis added).

Dr. Barzman sent this email to top administrators at Binghamton, including Department Chair Tom McDonough, Harpur College Dean Ann McCall, Ombudsman Dawn Osborne-Adams, Affirmative Action Officer and Title IX Officer Valerie Hampton, Director of Human Resources ("HR") Joseph Schultz, HR Assistant Director Sara DeClemente Hammoud, Chairs of the Ethical Standards Committee Gale Spencer and Sharon Bryant. *Id.* Dr. Barzman had already spoken about Tagg's behavior to many of these administrators and to others before them. *Id.* Dr. Barzman specifically told Omsbudsman Osborne-Adams, "I have extreme levels of anxiety about going to work on campus and fear for my personal safety regarding John Tagg." *Id.*

This was not the first or only time that Dr. Barzman had complained to administrators regarding Tagg's abusive workplace behavior.  Dr. Barzman continually told senior leaders at Binghamton about Tagg's domestic violence toward her and how it had led to continued workplace harassment and abuse. Compl. ¶ 42. Dr. Barzman repeatedly requested that Binghamton protect her from Tagg by moving her to a different department. *Id.* Even though professors had been moved between departments at Binghamton before, and even though Dr. Barzman's scholarship would have allowed her to work in other Harpur departments including but not limited to Anthropology, Sociology, History, and Comparative Literature, Binghamton's administrators refused to help her and left her vulnerable to continued abuse and harassment from Tagg and his allies in the Art History Department. *Id.*

The Complaint contains allegations that, between 1999 and continuing through 2022, Dr. Barzman made the following people aware of the abuse and workplace harassment she was enduring and enlisted their help to transfer her to a different department:

      a.  Defendant Donald Neiman (currently Binghamton's Provost and Vice President of Academic Affairs; formerly Dean of Harpur College);

    b.   Jean Pierre Mileur (Neiman's predecessor as Dean);

    c.   Dawn Osborne Adams (Binghamton's Ombudsman from 2011 to 2015);

    d.   Bathabile Mthombeni (Binghamton's Ombudsman from 2015 to present);

    e.   Ann McCall (Harpur Dean in 2014);

    f.   Valerie Hampton (Title IX Coordinator);

    g.   Sarah DeClemente-Hammoud (Human Resources);

    h.   James Pittaresi (Binghamton's Assistant Provost and Executive Director of the Center for Learning and Teaching);

    i.   Defendant Celia Klin (current Dean of Harpur College); and

    j.   Defendant Andrew Baker (current Title IX Officer at Binghamton).

Compl. ¶ 44.

### D.    The Workplace Abuse Continues After Barzman's Complaints

There was no meaningful response to Dr. Barzman's complaints. Compl. ¶ 39. Specifically, nothing was done to prevent Tagg from continuing his abuse of Dr. Barzman or to remove Dr. Barzman from the abusive situation by moving her to a different department. *Id.* Instead, Dr. Barzman was punished for speaking out in her own defense both by department members and by then-Dean Ann McCall, who warned Dr. Barzman that Dr. Barzman's Art History colleagues found it "uncomfortable" and "unfair" when she spoke of Tagg's history of domestic abuse and connected it with Tagg's current abuse of her in the workplace. *Id.*

The abuse Dr. Barzman experienced on Art History Department personnel committees continued, even after she complained to more than a dozen administrators. Compl. ¶ 40. In the Spring semester of 2019, Um (then department chair) called for the personnel committee to convene to discuss a colleague's tenure and promotion. *Id.* Once again Tagg was appointed

committee chair, despite the direction of Harpur College Dean Ann McCall in 2014 that, given Dr. Barzman's allegations of domestic abuse against Tagg, Dr. Barzman should not be required to sit on committees with Tagg, especially under his authority. *Id.* Under Tagg's direction, Dr. Barzman was given a marginal committee assignment, meetings were scheduled with disregard to her other commitments, and her suggestions and concerns were summarily rejected. *Id.*

In July of 2021, Dr. Barzman enlisted the assistance of her union. Compl. ¶ 45. She told the union's labor relations specialist at Binghamton about the history of the abusive relationship with Tagg and how it was continuing to affect her at work. *Id.* Although the union representative advocated on Dr. Barzman's behalf with Binghamton's HR Department and again requested they she be moved to another department, that request was, once again, denied. *Id.*

**E.    Dr. Barzman's Constructive Discharge and Damages**

In August 2021 Dr. Barzman, with no other options, and desperate to escape the toxic work environment in the Art History Department, accepted an arrangement which allowed her to be paid her an additional year's salary, with no departmental responsibilities other than completion of her two remaining doctoral students, in exchange for her retirement effective August 2022. Compl. ¶ 46.

As a result of the harassment and abuse, Dr. Barzman has suffered severe psychological distress and medical problems including cardiac issues that required frequent emergency medical care and a surgical intervention in 2015. Compl. ¶ 43.

### III.    ARGUMENT

#### A.    Standard of Review on Rule 12(b)(6) Motion to Dismiss

As this Court has stated, "[o]n a Rule 12(b)(6) motion, the Court must accept 'all factual allegations in the complaint as true, and draw[] all reasonable inferences in the plaintiff's favor.'" *Car-Freshner Corp. v. Sun Cedar, Inc.*, No. 7:15-CV-1463 (TJM), 2016 U.S. Dist. LEXIS 90669, *7-8 (N.D.N.Y. July 13, 2016) (quoting *Holmes v. Grubman*, 568 F.3d 329, 335 (2d Cir. 2009) (internal quotation marks omitted)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Holmes*, 568 F.3d at 335 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). A claim will have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

#### B.    Title IX Authorizes Claims for Employment Discrimination.

Defendants incorrectly state that a right of action does not exist under Title IX for employees, such as Plaintiff, alleging gender discrimination. Def. MOL at 2.

In a decision issued on June 2, 2022, several weeks before Defendants' motion to dismiss was submitted, the Court of Appeals for the Second Circuit made clear that university employees may sue for discrimination under Title IX of the Civil Rights Act of 1964. *See Vengalattore v. Cornell Univ.*, 36 F.4th 87, 2022 U.S. App. LEXIS 15174 (2d Cir. 2022). Vengalattore was a physics professor who was up for tenure when he hired a graduate student ("Jane Doe") as a lab assistant. He alleged that Doe tried to thwart his effort to obtain tenure by falsely claiming that plaintiff had raped her. The University denied Vengalattore tenure and concluded following its investigation that while he did not rape Doe, that they had had an inappropriate consensual

sexual relationship. Plaintiff's lawsuit did not challenge the tenure denial but, instead, the discriminatory investigation whose findings damaged his reputation. The district court dismissed the claim and stated that "an implied private right of action does not exist[] under Title IX for employees alleging gender discrimination in the terms and conditions of their employment." *Vengalattore v. Cornell Univ.*, 2020 U.S. Dist. LEXIS 76929, at *5 (N.D.N.Y.) (internal quotation marks omitted).

The Court of Appeals reversed. The Court interpreted United States Supreme Court authority to allow such claims, noting that the Court said in *North Haven Board of Educ. v. Bell*, 426 U.S. 512 (1982), that "employment discrimination comes within the prohibition of Title IX." *Vengalattore*, 2022 U.S. App. LEXIS 15174, at *36-37 (citing *North Haven*, 426 U.S. at 530). While, despite that language from *Bell*, courts were in disagreement about the scope of Title IX, the Second Circuit notes that the majority of the other circuits agree that employees may bring Title IX employment discrimination cases. *Vengalattore*, 2022 U.S. App. LEXIS 15174, at *39 ("Most of our Sister Circuits that have considered the question of whether an employee has an implied private right of action under Title IX have answered that question in the affirmative and have noted the applicability of Title VII principles in addressing procedural and overlapping substantive issues.") (citations omitted).

The Second Circuit thus held for the first time that "Title IX allows a private right of action for a university's intentional gender-based discrimination against a faculty member, and that Vengalattore's Title IX claim should not have been dismissed on the ground that he complained of such discrimination with respect to employment." *Id.* at *40.

Given this decision, announced 21 days before Defendants filed their motion to dismiss, Defendants' reliance on two district court decisions holding that there is no claim under Title IX

for employment discrimination is curious, to say the least. Defendants' argument on this point should be summarily rejected.

### C.      Plaintiff's Claims Are Timely

Defendants next argue that "most of" Plaintiff's claims are barred by the applicable statute of limitations, which is three years.  Def. MOL at 3.  The complaint was filed on April 18, 2022, *see* ECF No. 1, and, despite Defendants' attempt to shorten the statute of limitations by assuming facts not in the record, all claims beginning three years prior to the date of the filing of the complaint, *i.e.*, starting from April 18, 2019, are timely.  Defendants' statement that, because Plaintiff has stated that she was away from campus on sabbatical and on a fellowship from January 2019 until July 2020, should be flatly discarded.  *See* Def. MOL at 3.  Defendants' argument assumes that Plaintiff was not subjected to discriminatory treatment in 2019, which is inconsistent with the facts alleged.  Plaintiff has alleged that following took place in 2019: she was excluded from highly relevant professional training by Defendant Um, one of Tagg's allies in the Art History Department; she was iced out by colleagues in the Art History Department, who refused to communicate with her regarding remote teaching during the COVID-19 pandemic; and she was forced to sit on a personnel committee that her abuser, Tagg, led, despite the assurance from a SUNY Binghamton administrator that she would not be placed in such a subordinate position. Defendants' implication that a person cannot be subjected to unequal or discriminatory treatment while on sabbatical or a fellowship is wholly unsupported by law or logic; indeed, Defendants cite no cases in support of its theory. This Court should reject Defendants' invitation to artificially shorten the three-year statute of limitations.

Furthermore, Plaintiffs allegations that pre-date April 18, 2019, are also timely under the continuing violations doctrine. According to the Second Circuit, "the continuing violation theory

may be used where there have been specific and related instances of discrimination, and the employer has permitted them to continue unremedied for so long that its inaction may reasonably be viewed as tantamount to a policy or practice of tolerating such discrimination." *Fitzgerald v. Henderson*, 251 F.3d 345, 362 (2d Cir. 2001). The continuing violations doctrine has been referred to as "a generic feature of federal employment law," *O'Connor v. City of Newark*, 440 F.3d 125, 128 (3d Cir. 2005), and has been applied to claims arising under Title IX in federal courts around the country. *See Cavalier v. Catholic Univ. of America*, 306 F. Supp. 3d 9 (D.D.C. 2018) (reasoning that the doctrine should apply because the Title IX claims were similar in nature to Title VII hostile work environment claims); *Doe v. Brown Univ.*, 327 F. Supp. 3d 397, 408 (D.R.I. 2018) (noting that courts in the First Circuit consistently look to Title VII for guidance in interpreting Title IX and holding, based on the similarities between Title VII and Title IX claims, that the continuing violations doctrine applied to the plaintiff's Title IX claims).

As the evidence clearly shows, SUNY consistently displayed deliberate indifference to Plaintiff's complaints of harassment and discrimination. The conduct Dr. Barzman experienced within the limitations period is closely related to the conduct she experienced outside it. Accordingly, all of the conduct is actionable, and SUNY's statute of limitations argument should be rejected.[1]

---

[1] Even if this Court were to find that there was no continuing violation, "clearly established precedent dictates that [a] discriminatory act which is not made the basis for a timely charge can still be relevant background evidence in a Title VII proceeding." *Ramirez v. New York Presbyterian Hosp.,* 129 F. Supp. 2d 676, 680 (S.D.N.Y. 2001) (additional internal quotation marks omitted). Courts have held that the same is true as to a Title IX proceeding. *Berger v. Port Auth. of N.Y. and N.J.,* 150 F. Supp. 2d 504, 507 (E.D.N.Y. 2001) (Even where continuing violation exception did not apply to save plaintiff's time-barred claims, court would consider evidence of those claims on theory that it was relevant background to plaintiff's timely claim) (citing *Fitzgerald v. Henderson,* 251 F.3d 345, 365 (2d Cir. 2001) ("A statute of limitations does not operate to bar the introduction of evidence that predates the commencement of the limitations period but that is relevant to events during the period.")).

**D.      Plaintiff Has Stated a Claim Under Title IX**

Defendants next argue that Plaintiff has failed to state a proper claim. Def. MOL at 4. In support of its argument, Defendants selectively choose a small handful of facts from Plaintiff's highly detailed filed complaint, ignoring Plaintiff's exhaustive list of allegations of deliberate indifference. *See id.* Indeed, Defendants seem unaware that the basis of the Plaintiff's claim is that "Binghamton violated Title IX through its deliberate indifference to the sex-based harassment and abuse Plaintiff suffered from Tagg and other persons at Binghamton," *see* Compl. ¶ 49, instead focusing its argument on Plaintiff's alleged failure to "state a hostile work environment claim under Title VII." Def. MOL at 4-5. Regardless of Defendants' misreading of Plaintiff's Complaint, Plaintiff has adequately pleaded a case of deliberate indifference to sex-based harassment under Title IX sufficient to survive a motion to dismiss.

Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, *et seq.*, and the regulations adopted pursuant thereto, 34 C.F.R. part 106, (collectively "Title IX") prohibit sex-based discrimination in educational settings. The statute provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance [...]." 20 U.S.C. § 1681(a).

Sexual harassment is a form of discrimination prohibited by Title IX. *Doe v. Syracuse Univ.,* No. 5:18-cv-1100 (BKS/TWD), 2022 U.S. Dist. LEXIS 47053, at *33 (N.D.N.Y. Mar. 16, 2022) (citations omitted). Peer-on-peer sexual harassment, if sufficiently severe, can rise to the level of discrimination actionable under the statute. *See Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629, 649-50, 119 S. Ct. 1661, 143 L. Ed. 2d 839 (1999). To succeed in this claim, a

plaintiff must show that defendant had actual notice of the complained of discrimination and its response amounted to deliberate indifference to the discrimination. *See Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290, 118 S. Ct. 1989, 141 L. Ed. 2d 277 (1998) ("[A] damages remedy will not lie under Title IX unless an official [...] has actual knowledge of discrimination in the recipient's programs and fails to adequately respond.').

A plaintiff bringing a peer-on-peer sexual harassment Title IX claim must allege that a federally funded educational institution was deliberately indifferent to, and had actual knowledge of, sexual harassment that was so severe, pervasive, and objectively offensive that it could be said to have deprived the plaintiff of access to the educational opportunities or benefits. *Roskin-Frazee v. Columbia Univ.*, 17-CIV-2032-GBD, 2018 U.S. Dist. LEM 28937, \*11 (S.D.N.Y. Feb. 21, 2018) (citing *Davis*, 526 U.S. at 650); *see also Tubbs v. Stony Brook Univ.*, 343 F. Supp. 3d 292, 307 (S.D.N.Y. 2018). A school has actual knowledge of harassment when a school official with "authority to address the alleged discrimination and to institute corrective measures" has actual knowledge of the discrimination. *Doe*, 2022 U.S. Dist. LEXIS 47053, at \*34 (quoting *Papelino v. Albany Coll. of Pharmacy of Union Univ.*, 633 F.3d 81, 89 (2d Cir. 2011)). Deliberate indifference can be found when the defendant's response to known discrimination "is clearly unreasonable in light of the known circumstances." *Gant v. Wallingford Bd. of Educ.*, 195 F.3d 134, 141 (2d Cir. 1999) (quoting *Davis*, 526 U.S. at 648). The Supreme Court was clear in *Davis* that institutions may be liable for their deliberate indifference to known acts of peer sexual harassment. 526 U.S. at 648.

Here, Plaintiff's allegations are sufficient.  Dr. Barzman has alleged that she made numerous administrators at SUNY Binghamton, a recipient of federal funding, aware of both Tagg's history of domestic abuse of Dr. Barzman and his continuing abuse of Dr. Barzman in the

workplace.  She informed administrators with the power and ability to provide remedial measures, such as transferring Dr. Barzman to a different department.  Indeed, Dr. Barzman explicitly requested, on numerous occasions, to be moved to a different department.  SUNY's response of repeatedly denying her transfer requests, thus forcing her to work as a subordinate to her known abuser, was "clearly unreasonable" and amounted to deliberate indifference.  *See, e.g., Poulsen v. City of N. Tonawanda*, 811 F. Supp. 884, 897 (W.D.N.Y. 1993) ("Poulsen has presented enough evidence that Chief Graves was well aware of the incidents of sexual harassment and that his failure to do more than investigate and attempt to segregate the alleged harasser from his victim constituted knowing and deliberate indifference[.]"); *Wise v. N.Y. City Police Dep't*, 928 F. Supp. 355, 369 (S.D.N.Y. 1996) (summary judgment inappropriate where defendant had actual or constructive notice of sexual harassment and evidence presented demonstrated deliberate indifference in failure to remedy). Furthermore, Plaintiff has alleged, in detail and at great length, a long pattern of bullying, harassment, and exclusion by Tagg and his allies in the Art History Department, which is sufficient at this stage of litigation.

### E.    The Individual Defendants Are Not Sued Under Title IX

Although Defendants acknowledge in the Preliminary Statement section of their brief that Plaintiff's Title IX claims are against Defendant SUNY only, *see* Def. MOL at 1, they later argue that the individual Defendants cannot be sued in their individual capacities and "must be dismissed from this action with regard to the Plaintiff's Title IX claims." *Id.* at 6. Because Plaintiff has not brought any Title IX claims against any of the individual Defendants, this point in Defendants' brief is moot.

### F.      Plaintiff's NYSHRL Claims Should Proceed

Defendants' final argument, that Plaintiff's claims brought pursuant to the NYSHRL should be dismissed "because [Plaintiff] made no effort to administratively exhaust before the EEOC and bring those claims as Title VII claims," *see* Def. MOL at 6, is nonsensical and should be disregarded.  Defendants acknowledge, as they must, that, under the NYSHRL, there is no prerequisite exhaustion requirement. *See* Def. MOL at 6 (citing *Ross-Caleb v. City of Rochester*, 512 F. App'x 17 (2d Cir. 2013); *Wurtzburger v. Koret*, 2018 U.S. Dist. LEXIS 80925, 2018 WL 2209507, at *5 (S.D.N.Y. May 14, 2018)). Thus, Plaintiff could have filed her NYSHRL claims in New York State Supreme Court without completing any administrative steps, and Defendants' suggestion that Plaintiff has tried to "sneak" her NYSHRL claims "in through the courthouse's back door" makes no sense. Def. MOL at 6. There is nothing untoward or sneaky about bringing State law claims subject to the Federal District Court's supplemental jurisdiction. Here, there is no reason this Court should not exercise such jurisdiction and adjudicate the NYSHRL for the sake of "judicial economy, convenience, fairness, and comity." *Carnegie Mellon Univ. v. Cohill*, 484 U.S. 343, 350, (1988).

## CONCLUSION

Defendants' motion to dismiss should be denied in all respects. In the event, the Court grants any aspect of the motion, Plaintiff should be granted leave to amend her Complaint.

Dated: July 12, 2022
       New York, NY

                                      **GISKAN SOLOTAROFF & ANDERSON LLP**

                        By:       /s/

                                   Jason L. Solotaroff
                                   Amy Robinson
                                   90 Broad Street, 2nd Floor
                                   New York NY 10004
                                   (646) 964-9640
                                   *Attorneys for Plaintiffs*