UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

KAREN BARZMAN, PH.D,

                                      **Plaintiff,**

      v.                                                                     3:22-cv-00367 (TJM/ML)

STATE UNIVERSITY OF NEW YORK,
DONALD NEIMAN, CELIA KLIN, ANDREW
BAKER, and NANCY UM,

                                      **Defendants**.

_____

THOMAS J. McAVOY,
Senior United States District Judge

## DECISION & ORDER

Plaintiff Karen Barzman filed a Complaint alleging four causes of action: (1) a claim for sex-based discrimination under the Title IX of the Education Amendments of 1972 ("Title IX") against Binghamton University, a State University of New York ("SUNY") institution located in Binghamton, New York; (2) a claim for retaliation under Title IX against Binghamton University; (3) a claim under the New York State Human Rights Law ("NYSHRL") against all Defendants; and (4) a claim for retaliation under the NYSHRL against all Defendants. *See* Compl., Dkt. 1. Defendants move pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss claims in this action. *See* Dkt. 5. Plaintiff opposes the motion, Dkt. 7, and Defendants file a reply. Dkt. 9. For the reasons that follow, the motion is denied.

1

**Standard of Review**

On a Rule 12(b)(6) motion, the Court must accept "all factual allegations in the complaint as true, and draw[] all reasonable inferences in the plaintiff's favor." *Holmes v. Grubman*, 568 F.3d 329, 335 (2d Cir. 2009) (internal quotation marks omitted). To survive a motion to dismiss, "'a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Lynch v. City of New York*, 952 F.3d 67, 74 (2d Cir. 2020)(quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ("*Iqbal*"), in turn quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) ("*Twombly*")). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

**Factual Background**

The Court presumes familiarity with the allegations in the Complaint, which are deemed to be true for purposes of this motion. The Court will set forth only those allegations necessary to resolve the pending issues on this motion. Suffice it to say that Barzman was hired as a professor at Binghamton University in the Art History Department in Harpur College beginning in 1999, and continued in that position until she felt she was forced to retire effective August 2022.

The case concerns Barzman's relationship with, and treatment by, non-defendant John Tagg, currently Distinguished Professor in Binghamton's Art History Department. Barzman was involved in a domestic relationship with Tagg from September 1996 until May 2005, which Barzman says was tumultuous and involved physically violent and

emotionally abusive conduct by Tagg.  Barzman alleges that while Tagg arranged for her to be hired at Binghamton University (Barzman had been teaching at Cornell University at the time), she asserts that once she joined the faculty of Tagg's department, he began abusing her at work by treating her in a demeaning and patronizing manner at faculty meetings and encouraging other faculty members to treat her in the same way.

Barzman further contends that after she ended her domestic relationship with Tagg in 2005, he increased his harassment of her in the workplace. Barzman maintains that Tagg's Art History Department allies, in junior positions and obligated to him as chair, began treating her differently and worse than other faculty members. The difference of treatment included, *inter alia*, Barzman being ignored, criticized, or ridiculed at department events such as faculty meetings and social occasions; Barzman's exclusion from professional training; Tagg and his allies cutting off communication with Brazman regarding departmental matters and refusing to share important information regarding classroom teaching and instruction; Brazman being given disadvantageous teaching assignments; and Brazman being prevented from contributing to Art History Department personnel committees.

The Complaint alleges that Barzman made numerous efforts to inform Binghamton University administrators about Tagg's behavior toward her, repeatedly requesting that she be moved to a different department.  But, she asserts, Binghamton University's administrators refused, leaving her vulnerable to continued harassment from Tagg and his allies in the Art History Department. Further, she asserts she was punished for speaking out both by Art Department members and by then-Dean Ann

McCall, who warned Barzman that her Art History colleagues found it "uncomfortable" and "unfair" when she spoke of Tagg's history of domestic abuse and connected it with Tagg's workplace conduct. Further, Plaintiff contends, she experienced harassment on an Art History Department personnel committee chaired by Tagg because, under Tagg's direction, Brazman was given a marginal committee assignment, meetings were scheduled with disregard to her other commitments, and her suggestions and concerns were summarily rejected.

In July of 2021, Barzman enlisted the assistance of her union, explaining the history of the abusive relationship with Tagg and how it was continuing to affect her at work. Although the union representative advocated on Barzman's behalf with Binghamton University's Human Resource Department and requested she be moved to another department, that request was denied. "In August 2021, Dr. Barzman, with no other options, and desperate to escape the toxic work environment in the Art History Department, accepted an arrangement which allowed her to be paid . . . an additional year's salary, with no departmental responsibilities other than completion of her two remaining doctoral students, in exchange for her retirement effective August 2022." Compl. ¶ 46. This action followed.

## Discussion

### a. Title IX Employment Gender-Discrimination Claims

In their opening brief, Defendants argued that a right of action does not exist under Title IX for employees, such as Plaintiff, who are alleging gender discrimination in the terms and conditions of their employment. *See* Dkt. 5-1, at 2. In their reply, however, Defendants acknowledge that since they drafted their opening brief the Second Circuit

4

issued its decision in *Vengalattore v. Cornell Univ.*, 36 F.4th 87 (2d Cir. 2022), holding that "Title IX allows a private right of action for a university's intentional gender-based discrimination against a faculty member." 36 F.4th at 106. Thus, Defendants concede, their original assertion "that Plaintiff could not bring a Title IX cause of action it is no longer good law." *See* Dkt. 9. Based on this concession, Defendants' first argument for dismissal is denied.

### b. Title IX statute of limitations

Next, Defendants argue that Title IX's three-year statute of limitations period bars most of Plaintiff's complaint. Plaintiff opposes this contention.

As Defendants point out, because Title IX does not contain a statute of limitations, a court must apply the most appropriate or analogous state statute of limitations. The Second Circuit has determined that Title IX claims are most closely analogous to personal injury actions. *Curto v. Edmundson*, 392 F.3d 502, 503 (2d Cir. 2004). In New York, personal injury claims must be filed within three years from the time the cause of action accrues. *Id.* (citing N.Y. C.P.L.R. 214(5)). Thus, Title IX claims have a three-year statute of limitations. *See Irrera v. Humpherys*, 695 F. App'x 626, 628 (2d Cir. 2017) (applying New York's three-year personal injury statute of limitations to Title IX claim sounding in sexual harassment).

Defendants contend that since this action was filed on April 18, 2022, claims before April 18, 2019 are time-barred. Defendants argue:

> Plaintiff sets forth the alleged facts of the case in paragraphs 17 through 46 of the Complaint. Suffice it to say that Plaintiff asserts that she began working at Binghamton University in 1999, and she became a full professor in 2017. Complt. at 18-19. Plaintiff alleges that she was in a violent domestic relationship with a non-defendant, Professor John Tagg, from 1996 to 2005. *Id.* at 20. Plaintiff also alleges that she was wronged by the Defendants, in

> various ways, *prior to April 18, 2019* – so those claims are time-barred. Plaintiff then alleges that she was away from Binghamton University on sabbatical and on a fellowship from January 2019 until July 2020. *Id.* at 31.
>
> Thus, based upon the above-stated case law and facts, anything that occurred prior to Plaintiff's return from sabbatical in July 2020 is time-barred.

Dkt. 5-1 at 3 (emphasis in original).

Plaintiff counters that "despite Defendants' attempt to shorten the statute of limitations by assuming facts not in the record, all claims beginning three years prior to the date of the filing of the complaint, *i.e.,* starting from April 18, 2019, are timely." Dkt. 7 at 11.  Plaintiff maintains that Defendants' argument that her claims are untimely because she was away from campus on sabbatical and on a fellowship from January 2019 until July 2020 should be flatly discarded. Dkt. 7, at 11.  Plaintiff asserts:

> Defendants' argument assumes that Plaintiff was not subjected to discriminatory treatment in 2019, which is inconsistent with the facts alleged. Plaintiff has alleged that following took place in 2019: she was excluded from highly relevant professional training by Defendant Um, one of Tagg's allies in the Art History Department; she was iced out by colleagues in the Art History Department, who refused to communicate with her regarding remote teaching during the COVID-19 pandemic; and she was forced to sit on a personnel committee that her abuser, Tagg, led, despite the assurance from a SUNY Binghamton administrator that she would not be placed in such a subordinate position. Defendants' implication that a person cannot be subjected to unequal or discriminatory treatment while on sabbatical or a fellowship is wholly unsupported by law or logic; indeed, Defendants cite no cases in support of its theory. This Court should reject Defendants' invitation to artificially shorten the three-year statute of limitations.

*Id.*  Plaintiff also argues that her allegations that pre-date April 18, 2019 are timely under the continuing violations doctrine. *Id.*

It is plausible that Plaintiff could have been affected in the manner she describes while on sabbatical. She contends that she was rejected in her application to participate in the Digital Humanities Research Institute training program. Compl. ¶ 29. Drawing reasonable inferences in Plaintiff's favor, it is plausible that Plaintiff could have participated in this training program while on sabbatical but her application was nonetheless rejected. The parties can engage in discovery to pinpoint when the underlying conduct occurred, and whether Plaintiff was eligible to participate in the training while on her sabbatical and fellowship. On the present record, Defendants' motion in this regard is denied.

As to communications regarding remote teaching during the COVID-19 pandemic, the allegations in the Complaint indicate that online teaching began in "early 2020," that Plaintiff reached out to colleagues about remote learning while on sabbatical in anticipation of her return "to teaching in August 2020," and that these colleagues failed to respond to her requests for this information. *See id*. ¶¶ 30-32. Accepting the allegations in the Complaint as true and drawing reasonable inferences in Plaintiff's favor, it appears that this conduct occurred in 2020 and thus within the statute of limitations period. Further, it is plausible that Plaintiff reached out to her colleagues about remote teaching while she was on sabbatical in anticipation of her return to teaching. Therefore, Defendants' motion in this regard is denied.

As to Plaintiff sitting on a personnel committee led by Tagg, the Court accepts as true that Plaintiff sat on this committee even though she was on sabbatical. The Complaint indicates that this committee met "in the spring

semester of 2019." *Id.* ¶ 40. While it is unclear when during the spring semester the allegedly discriminatory conduct actually occurred, the parties can engage in discovery to pinpoint when this conduct occurred. On the present record, Defendants' motion in this regard is denied.

The Court next turns to the continuing violation doctrine.

"Under the continuing violation doctrine, a plaintiff may bring claims for discriminatory acts that would have been barred by the statute of limitations as long as an act contributing to that discrimination took place within the statutory time period." [*Purcell v. N.Y. Inst. of Tech.-Coll. of Osteopathic Med.*, 931 F.3d 59, 65 (2d Cir. 2019)] (alterations omitted) (quoting *Papelino v. Albany Coll. of Pharmacy of Union Univ.*, 633 F.3d 81, 91 (2d Cir. 2011)). "Therefore, 'a continuing violation may be found where there is proof of specific ongoing discriminatory policies or practices, or where specific and related instances of discrimination are permitted by the defendant to continue unremedied for so long as to amount to a discriminatory policy or practice.'" *Id.* (alteration omitted) (quoting *Cornwell v. Robinson*, 23 F.3d 694, 704 (2d Cir. 1994)). Critically, "[t]he continuing violation doctrine ... applies not to discrete unlawful acts, even where those discrete acts are part of a 'serial violation,' but to claims that by their nature accrue only after the plaintiff has been subjected to some threshold amount of mistreatment." *Gonzalez v. Hasty*, 802 F.3d 212, 220 (2d Cir. 2015) (alteration omitted) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114–15, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002)); *see also Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 907 (2d Cir. 1997) ("A continuing violation is not established merely because an employee continues to feel the effects of a discriminatory act on the part of the employer."); *Chandrapaul v. City Univ. of N.Y.*, No. 14-CV-790, 2016 WL 1611468, at *14 (E.D.N.Y. Apr. 20, 2016) ("[T]he continuing violation exception is 'usually associated with a discriminatory policy, rather than with individual instances of discrimination.'" (quoting *Fitzgerald v. Henderson*, 251 F.3d 345, 359 (2d Cir. 2001))).

While it appears that the continuing violation doctrine can apply to Title IX claims, *see Purcell*, 931 F.3d at 65–66, . . . the doctrine "is heavily disfavored in the Second Circuit and courts have been loath to apply it absent a showing of compelling circumstances." *Weslowski v. Zugibe*, 14 F. Supp. 3d 295, 304 (S.D.N.Y. 2014) (citation omitted); *see also Joseph S. v. Hogan*, 561 F. Supp. 2d 280, 315 (E.D.N.Y. 2008) ("[T]he continuing violation rule is disfavored by courts in [the Second] [C]ircuit." (quotation marks omitted)).

*Doe v. State Univ. of New York Purchase Coll.*, No. 21-CV-8417 (KMK), 2022 WL 2972200, at *9 (S.D.N.Y. July 27, 2022).

There is no dispute that Plaintiff asserts potential Title IX discrimination claims based on conduct within the three-year statute of limitations period. *See* Def. MOL at 4. Plaintiff argues that "the evidence clearly shows [that] SUNY consistently displayed deliberate indifference to Plaintiff's complaints of harassment and discrimination." Pl. MOL at 12. She contends that the conduct she experienced within the limitations period "is closely related to the conduct she experienced outside it," and that "all of the conduct is actionable." *Id.* Defendants do not respond to this argument in their reply.

The allegations in the Complaint could be construed as a series of separate discrete acts, claims which accrued at the time of each act. However, Plaintiff's allegations could also be construed as related instances of discrimination that were permitted by Binghamton administrators to continue unremedied for an extended period of time such to amount to a discriminatory policy or practice. Without argument from Defendants on this issue, the Court will deny the motion on this ground. *See Hauff v. State Univ. of New York*, 425 F. Supp. 3d 116, 135 (E.D.N.Y. 2019)("Here, similar instances of harassment by Fischer both before and after December 20, 2015, are alleged. Thus, as a matter of pleading, there are sufficient allegations to support application of the continuing violations doctrine."). Defendants are free to challenge the application of the continuing violations doctrine on a subsequent motion.

### c. Stating an Actionable Sex-Based Title IX Harassment Claim

Defendants next argue that Plaintiff fails to state an actionable sex-based Title IX harassment claim. Plaintiff contends she has pleaded such a claim in a manner sufficient to survive a motion to dismiss.

Title IX provides, in relevant part, that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance [...]." 20 U.S.C. § 1681(a). The Second Circuit has held that "the burden-shifting framework established by the *McDonell Douglas* line of cases . . . under Title VII, and the associated pleading burden that we articulated in *Littlejohn*, apply also to Title IX claims alleging discrimination on account of sex in education programs." *Doe v. Columbia University*, 831 F.3d 46, 55 (2d Cir. 2016)(citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973); *Littlejohn v. City of New York*, 795 F.3d 297 (2d Cir. 2015)). "To survive a motion to dismiss, a plaintiff alleging 'gender discrimination by a university must do more than recite conclusory assertions.'" *Sutton v. Stony Brook Univ.,* No. 21-2055, 2022 U.S. App. LEXIS 26975, at *3 (2d Cir. Sep. 27, 2022)(summary order)(quoting *Yusuf v. Vassar Coll.*, 35 F.3d 709, 713 (2d Cir. 1994). "A Title IX plaintiff 'must specifically allege the events claimed to constitute intentional discrimination as well as circumstances giving rise to a plausible inference of . . . discriminatory intent.'" *Id.* (quoting *Yusuf,* 35 F.3d at 713).

Sexual harassment is a form of discrimination prohibited by Title IX. *Doe v. Syracuse Univ.*, No. 5:18-cv-1100 (BKS/TWD), 2022 U.S. Dist. LEXIS 47053, at *33 (N.D.N.Y. Mar. 16, 2022) (citations omitted). Peer-on-peer sexual harassment, if

sufficiently severe, can potentially rise to the level of discrimination actionable under the statute. *See Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629, 649-50, 119 S. Ct. 1661, 143 L. Ed. 2d 839 (1999). To succeed on such a claim, a plaintiff must show that the defendant had actual notice of the complained of discrimination and its response amounted to deliberate indifference to the discrimination. *See Gebser v. Lago Vista Indep. Sch. Dist.,* 524 U.S. 274, 290, 118 S. Ct. 1989, 141 L. Ed. 2d 277 (1998) ("[A] damages remedy will not lie under Title IX unless an official [...] has actual knowledge of discrimination in the recipient's programs and fails to adequately respond.').  A school has actual knowledge of harassment when a school official with "authority to address the alleged discrimination and to institute corrective measures" has actual knowledge of the discrimination. *Doe*, 2022 U.S. Dist. LEXIS 47053, at *34 (quoting *Papelino v. Albany Coll. of Pharmacy of Union Univ.*, 633 F.3d 81, 89 (2d Cir. 2011)).  "A defendant acts with deliberate indifference for Title IX purposes 'when the defendant's response to known discrimination is clearly unreasonable in light of the known circumstances.'" *Posso v. Niagara Univ.*, 518 F. Supp. 3d 688, 697 (W.D.N.Y. 2021)(quoting *Roskin-Frazee v. Columbia Univ.*, No. 17 Civ. 2032 (GBD), 2018 U.S. Dist. LEXIS 28937, 2018 WL 6523721, at *4 (S.D.N.Y. Nov. 26, 2018)); *see SB v. Newark Cent. Sch. Dist.*, No. 6:21-CV-06138 EAW, 2022 U.S. Dist. LEXIS 32033, at *16-17 (W.D.N.Y. Feb. 23, 2022) ("To constitute deliberate indifference, the school's conduct must be clearly unreasonable.")(citations omitted).  "The clearly unreasonable standard requires more than mere negligence; it is a high standard that seeks to eliminate any risk that an educational institution would be liable in damages not for its own official decision but

instead for another individual's independent actions." *Posso*, 518 F. Supp. 3d at 697 (cleaned up).

Here, accepting the allegations in the Complaint as true, Plaintiff made numerous administrators at Binghamton University, a recipient of federal funding, aware of both Tagg's history of domestic abuse of Barzman and his continuing harassment of her in the workplace. She informed administrators with the power and ability to provide remedial measures, such as transferring Barzman to a different department, and explicitly requested, on numerous occasions, to be moved to a different department. Yet, Binghamton University repeatedly denied Plaintiff's transfer requests, thus forcing her to work as a subordinate to an individual she contends was harassing her at work. This plausibly alleges that Binghamton University's response was "clearly unreasonable" under the circumstances and amounted to deliberate indifference. Accordingly, Defendants' motion in this regard is denied.

### d. Title IX Claims Against Individual Defendants

Although Defendants acknowledge in the Preliminary Statement section of their brief that Plaintiff's Title IX claims are against Binghamton University only, *see* Def. MOL at 1, they later argue that the individual Defendants cannot be sued in their individual capacities and "must be dismissed from this action with regard to the Plaintiff's Title IX claims." *Id.* at 6. Plaintiff responds that because she has not brought any Title IX claims against any of the individual Defendants, this point in Defendants' brief is moot. The Court agrees. Defendants' motion in this regard is denied as moot.

### e. NYSHRL Claims

Defendants argue that, presuming the Court dismisses all claims over which it has original jurisdiction, the Court should decline to exercise supplemental jurisdiction over the NYSHRL claims. See Def. MOL at 6-7. Defendants acknowledge there is no prerequisite exhaustion requirement under the NYSHRL, see id. at 6 (citing *Ross-Caleb v. City of Rochester*, 512 F. App'x 17 (2d Cir. 2013); *Wurtzburger v. Koret*, 2018 U.S. Dist. LEXIS 80925, 2018 WL 2209507, at *5 (S.D.N.Y. May 14, 2018)), but argue that "district courts in this Circuit have repeatedly held that 'to allow Plaintiff to proceed on [] identical state claims after the Court has dismissed the corresponding Title VII claims due to Plaintiff's failure to exhaust would essentially allow [Plaintiff] to get the claims into this Court through the courthouse's back door.'" *Id.* at 5-6 (quoting *Chidume v. Greenburgh-North Castle Union Free Sch. Dist.*, 2020 U.S. Dist. LEXIS 78720, at *29 (S.D.N.Y. May 4, 2020)(internal quotation marks and citation omitted)). Plaintiff argues that she could have filed her NYSHRL claims in New York State Supreme Court without completing any administrative steps, and Defendants' suggestion that Plaintiff has tried to "sneak" her NYSHRL claims "in through the courthouse's back door" makes no sense. Pl. MOL at 16 (citing Def. MOL at 6).

Because the federal question claims are not dismissed, there is no reason at this time that the Court should not exercise supplemental jurisdiction and adjudicate the NYSHRL claims for the sake of "judicial economy, convenience, fairness, and comity." *Carnegie Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988). Accordingly, Defendants' motion in this regard is denied.

## Conclusion

For the reasons stated above, Defendants' motion to dismiss, Dkt. 5, is, in all respects, **DENIED.**

**IT IS SO ORDERED.**

Dated: March 3, 2023

Thomas J. McAvoy
Senior, U.S. District Judge